157 P.2d 772

**KIRKPATRICK et al. v. McMILLAN.**

No. 4843.

Supreme Court of New Mexico.

March 20, 1945.

Fred C. Knollenberg, of El Paso, Tex., and Edwin Mechem, of Las Cruces, for appellant.

W. C. Whatley and R. C. Garland, both of Las Cruces, for appellees.

BICKLEY, Justice.

The plaintiffs being the owners of some very rough land, heavily covered with mesquite and tornillo, made a written contract with defendant containing, among other things, the following recital:

"That said tract of land is very rough, and the owners desire it to be leveled so it can be put in crops, and to that end have contracted with the above named contrac-

tor to grub, clear, and level the said land, *as mutually agreed upon,* so it can be cultivated, and to that end agree as follows:" (Emphasis supplied.)

Then follow specific agreements as to how the main object is to be accomplished.

The appellant claimed that the written contract is ambiguous, thus opening the way for oral evidence to supplement the written agreement. Appellees vigorously controvert this and seek to hold appellant to the written directions. Many of the points raised by appellant depend largely for their solution upon the answer to this contention.

█ Appellant urges that the phrase "as mutually agreed upon" raises the inference that there were oral agreements not reduced to writing. From an examination of the whole record we are forced to disagree with appellant. We think the controverted phrase is parenthetical and means nothing more than "as mutually agreed upon *herein.*" (Italicized word supplied.) The contract proceeds:

"1. That the parties hereto will get some competent surveyor to place a starting level at some point from which irrigation can be made, and set stakes and levels for irrigation ditches and laterals, and the contractor agrees to work from said levels so established by the owners, and after clearing and grubbing said land, to level same on two levels, *as outlined,* so the land will properly irrigate from the ditch locations, it being understood there shall be a fall of one inch to one hundred feet from irrigation ditches.

"2. That the contractor will furnish all labor, tools, material and appliances necessary so as to clear, grub, and level said land, pay for same in full so there shall be no lien of any sort on said property, other than specifically hereinafter provided, same to be without any cost or charges of whatsoever nature against the owners, except the consideration agreed to be paid hereinafter, in paragraph seven.

"3. It is understood that on account of the condition of the ground that the land shall be leveled on two levels, *as heretofore outlined,* and in accordance with the stakes to be set by some engineer, and the contractor agrees to level in accordance with the grade stakes so placed.

"4. That the contractor is not obliged hereunder to build the ditches, but the owners are *to put in their own irrigation ditches and laterals, which* together with the grade stakes, are to be *placed* on or before January 30, 1942, and the contractor shall start to work and finish the job as soon as possible after the grade stakes are set.

"5. It is also mutually understood and agreed that the owners are to permanently fix their corner stakes on their tract of land, which they warrant does not exceed 57.29 acres.

"6. After the grubbing, clearing, and leveling are done, the contractor agrees to go over said land with a ripper, and rip it

12″ to 15″ deep, so as to loosen up the soil and eliminate as much as possible any roots that there might be left in the ground. However, after the leveling he does not agree to clear out and pull all the roots that may extend below the level fixed for cultivation." (Emphasis supplied.)

We think the phrases "as outlined" and "as heretofore outlined" mean as outlined in the written contract.

There is another controversy as to the meaning of the language in paragraph 4 now to be noticed. As we understand it appellant thinks "placed" has the significance of "build." We do not agree to that. We think the italicized words in paragraph 4 mean only that the grade stakes were to be physically placed, but that the placing of the ditches meant their location merely, and not as contended by the appellant that "the *building* of irrigation ditches and laterals was the very first thing to be done." (Emphasis supplied.) We agree with appellees' counsel that:

"It would have been impractical to have constructed irrigation ditches and laterals before the ground was grubbed and leveled, as the machinery would have of course had to pass over them in doing the work."

In other words, we agree with the trial court that the written contract is not ambiguous.

Appellant presents 21 assignments of error which he argues under 23 points. We have considered each of these in detail, but we do not find it necessary to discuss each one specifically.

The court did not err in refusing to give the instructions requested by defendant's requested instruction No. 14, which was to the effect that it was agreed between the parties that the work was to be done the "easy way" for the defendant, and that if the jury believed that plaintiffs were insisting on performance in a way that was not the easy way, then defendant was excused from further performance. To have given this requested instruction, or similar instructions, would have injected into the case a false issue. We find no error in the instructions as to the measure of damages to be applied in case the jury concluded that the defendant breached the contract.

The court did not err in basing its judgment as to the amount of damages upon the special findings of the jury instead of upon the lesser amount declared in the general verdict. The conflict was doubtless due to error in computation. The conflict was properly resolved by the court under the circumstances of this case in favor of the special findings. See Rheinboldt v. Fuston, 34 N.M. 146, 278 P. 361.

We find no error in the court's refusal to admit in evidence defendant's proferred Exhibit No. 2.

Although the point is a close one, we do not find that the court committed reversible or prejudicial error in refusing to strike the testimony of the witness, Joseph W.

Taylor, as to the cost of completing the work on the south half.

■ The trial court did not err in refusing to direct a verdict in favor of the defendant.

It appears that for the purposes of a performance of the contract the land involved was divided into what was commonly referred to throughout the trial as the north half and the south half. The appellant commenced work on the contract and proceeded first to what he contends was a completion of the work on the north half. The plaintiffs contend that the defendant never completed the work in the manner provided for in the contract, either as to time or manner of performance. The plaintiffs contend that even as to the north half, which was the more nearly completed, the accomplishment was so late in the season and so defective that they were deprived of the beneficial use of the north half as well as the south half for 1942. There is no claim by the defendant that the south half was completed in time to put in a crop for the year 1942 or at all.

Among the instructions of the court is instruction No. 10, which is as follows:

"10. You are instructed that by the terms of the contract in evidence in this case the defendant charged himself with the obligation of clearing, grubbing and levelling the tract of land involved in this case from ditch locations to be established and which the pleadings admit were established by a competent surveyor, and these things the defendant obligated himself to do and complete on or before March 15, 1942. These obligations the defendant was bound to perform unless you should find from the evidence that his performance was rendered impossible by some act of the plaintiffs *or that the plaintiffs waived performance of such obligations within such period,* or that the defendant's failure to perform such obligations within such time was due to some act or failure or delay of the plaintiffs in fulfilling their duties and obligations under the contract." (Emphasis supplied.)

■ The general verdict of the jury found the issues in favor of the plaintiffs, so we must conclude that the jury found that the plaintiffs did not waive performance of the defendant's obligation to complete the work before March 15, 1942.

■ The testimony elicited from the witnesses was conflicting upon the material issues. A careful reading of the record satisfied us that there is substantial evidence to support the findings which are to be inferred from the jury's verdict. In addition to the testimony adduced, the jury at the request of the defendant was directed by the court to view the land in controversy. The results of this inspection of the premises by the jury doubtless aided them in resolving any doubts they had arising from the testimony as to the truth of the matter. Thus, appellant is confronted with an additional difficult task in asserting that there is no substantial evidence to support the findings of the jury.

Since it is possible that the case may be retried, we take occasion to observe at this point that we find no fault with the instructions of the court except as to the matter now to be noticed.

We think the most serious question presented by appellant is his contention that even if he did not fully perform the contract as to the north half of the land, or if his performance was defective, such lack of performance or defective performance was waived by the plaintiffs, through their acceptance of the work as being in compliance with the contract.

Defendant presented this question by tendering his requested instruction Nos. 3, 7 and 8 as follows:

"3. The court further instructs you that the plaintiffs are not entitled to any damages for failure on part of the defendant to properly level and grub the N½ of the land for the reason that the plaintiffs accepted the same, entered into, and proceeded to farm the same."

"7. If you believe from a preponderance of the evidence that the plaintiffs accepted the north half and started to farming it, they would not be entitled to recover anything on account of the failure of the defendant to properly grub and level the same.

"8. If you believe from a preponderance of the evidence that the plaintiffs accepted the north half and started farming the same, they would not be entitled to recover anything by reason of loss of rental on the same."

These requested instructions were all refused and we do not find that there is among the instructions given by the court any instruction covering this point presented by defendant. We do find that in the court's instruction No. 10, heretofore quoted, the jury could consider the question of whether the plaintiffs "waived performance of such obligations within such period." But as we view it, this referred only to the time element and did not adequately or at all present plaintiffs' theory that performance of his contract as to the north half had been discharged through acceptance by the plaintiffs.

Williston on Contracts, Revised Ed., Sec. 724, is as follows:

"*Acceptance of defective performance under a contract for work or construction.*—Where work contracted for has been inadequately performed, there seems no difference in principle from the case presented where there has been defective performance of a contract for the purchase and sale of goods, except where the property upon which work has been done belongs to the employer and he is, therefore, obliged, in order to take or retain possession of his own property, to accept the work upon it. Subject to this exception, if the defect in the work is or ought to be known, its acceptance will impose a duty to pay for it, and if no protest or complaint of the quality of the work is promptly

made, will also discharge any right of damages for defects in the performance.

"But there is no legal presumption that the latter result follows from acceptance, unless a length of time unreasonable under the circumstances elapses without complaint. The question is one of fact. Especially where the work in question results in attaching the property to the employer's real estate, as in case of a building contract, the law is clear that the occupancy and use of the building or other attached property does not of itself indicate assent to relieve the builder from liability or entitle him to sue upon the contract. Though in many cases of defective performance the builder is permitted to recover on the contract or on principles of quasi contract, his right to do so is not enlarged by the owner's occupancy of the building. But it also seems generally assumed, if not decided, that if the owner does assent to accept a defective building as full performance, the acceptance, though in effect amounting to a surrender of a possible defense or right of action for no consideration, precludes subsequent objection."

See also 17 C.J.S., Contracts, § 514, where it is said pp. 1100, 1101:

"An acceptance of the work or structure, as in compliance with the contract, will ordinarily constitute a waiver of a full performance or defective performance of a building contract, and such acceptance may be expressed or implied from the conduct of the owner. Whether or not his acts amount to an acceptance is generally a question of fact depending on all the circumstances of the case."

Counsel for appellees does not give a very satisfactory answer to this contention. They say that the contention of appellant is but a reiteration of the argument he made during the trial, and that "the jury heard him and resolved the question in favor of appellees. Verdict and judgment supported by any substantial evidence will not be disturbed on appeal." We do not have a report of the argument of counsel to the jury in the record. The verdict of the jury does not, at least on the record before us, cure the error committed by the court in failing to give the instructions Nos. 3, 7 and 8 requested by the defendant or otherwise submitting the issue of waiver of more complete performance by the defendant as to the north half. The evidence bearing on the question of acceptance or waiver is conflicting and we do not hazard a guess as to what the jury might have found if the issue of acceptance or waiver had been submitted in instructions setting forth the elements of waiver of adequate performance by acceptance of the performance under circumstances to be properly delineated in such instructions.

If the appellees will enter a remittitur in a sum equivalent to the amount of damages recovered for alleged failure of defendant to perform the contract as to the north half of the land involved, the judgment will be affirmed for the balance and the costs of the appeal will be divided equally between the parties, and such fur-

ther judgment will be rendered as will take care of the rights of the parties due to the fact that the defendant would be entitled to a credit of two thousand thirty-eight and 33/100ths (2038.33) dollars on account of the cancellation and release of notes and mortgage deed made by plaintiffs as part of the contract price for leveling the land.

If the appellees shall fail to enter such remittitur within thirty-five days hereafter, then the judgment will be reversed and the cause remanded with directions to the district court to grant a new trial, said costs to be charged to appellees, and

It is so ordered.

MABRY, C. J., and SADLER, BRICE, and LUJAN, JJ., concur.